---

(No. 11008.—Reversed in part and remanded.)
THE PEOPLE *ex rel.* James E. Payne, County Collector, Appellant, *vs.* G. C. GRAHAM *et al.* Appellees.

*Opinion filed October 23, 1917.*

1. DRAINAGE—*Farm Drainage act does not make filing of annual reports by commissioners a condition precedent to levying assessment.* The Farm Drainage act has not made the filing and recording of the reports of the commissioners and the treasurer each year, or in the year immediately preceding an assessment, a condition precedent to the levy of an additional assessment.

2. SAME—*when drainage record sufficiently shows a deficiency.* Where the last levy recorded in the drainage record was just enough to cover the deficiency then shown by the record and no subsequent levy is shown on the record for several years there is a sufficient showing of a deficiency to warrant the levy of an additional assessment.

3. SAME—*notice of meeting to hear objections is jurisdictional.* The notice to land owners of the meeting to hear objections, as required by the Farm Drainage act, is jurisdictional, and without it the judgment of confirmation of a drainage assessment is void.

4. SAME—*findings of commissioners as to jurisdictional facts may be impeached orally.* On an application for judgment for delinquent drainage assessments the findings of the commissioners as to jurisdictional facts are only *prima facie* evidence and may be impeached orally, as no presumptions are indulged in favor of the jurisdiction of such tribunals.

5. SAME—*commissioners not required to personally deliver the notice of hearing.* The Farm Drainage act does not require that the drainage commissioners shall personally deliver the notice of the hearing of objections to the classification but only that they shall cause such notice to be served by delivery, and it is sufficient if the delivery is made by a messenger.

6. SAME—*every owner is injured by omission to classify property subject to assessment.* The object of the classification of lands in a farm drainage district is to require the payment of the expense of drainage by the owners of lands benefited in proportion to the amount of benefits received, and every owner is therefore injured by the omission to classify land which is subject to assessment.

7. SAME—*classification of a part, only, of lands in district is unauthorized.* An intentional classification of a part, only, of the lands of a drainage district is unauthorized by law; and the same is true where the lands of a part of the owners have been omitted from the classification through a failure of the commissioners to acquire jurisdiction of such owners.

APPEAL from the County Court of Douglas county; the Hon. D. H. WAMSLEY, Judge, presiding.

S. S. DUHAMEL, State's Attorney, W. THOMAS COLEMAN, EDWARD C. CRAIG, and DONALD B. CRAIG, for appellant.

DOBBINS & DOBBINS, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a judgment of the county court of Douglas county denying the application of the county collector for judgment against certain lands of the appellees for a drainage assessment on the lands of sub-district No. 5 of Drainage District No. 2 of the town of Garrett.

On motion of the appellant certain of the objections filed by the appellees were stricken. Those remaining which are now relied upon are: (1) That no report of the commissioners of the drainage district is on file and recorded in the office of the clerk of the district upon which

to base a determination as to whether or not any special assessment was necessary; (2) that there was no resolution ordering such amount of money to be raised by special assessment as may be necessary upon the lands of the district; (3) that the assessment roll was not filed with the town clerk; (4) that the assessment roll ignores the original classification of the lands in the sub-district and purports to follow a new classification, which is void because made without notice to some of the land owners and because a part of the assessment is spread against lands not included in the drainage district.

Drainage District No. 2 of the town of Garrett was organized under the Farm Drainage act, and section 47 of that act requires the drainage commissioners to make annual reports of their acts as such commissioners and file them with the clerk of the district on or before November 1 of each year, stating the kind, character, amount and cost of work done in the district, the amount of orders issued and the amount outstanding, and such facts as may be of interest or benefit to the land owners in the district. The treasurer is also required to make annual reports to the commissioners on or before October 30 of each year, containing a statement of all moneys received and from what source, and all moneys paid out, and such other facts as the commissioners may require, which reports the commissioners are required to file, with their report, in the clerk's office. The clerk is required to record these reports in the drainage record and also cause them to be published in some newspaper in the county. These reports by the commissioners and the treasurer were not filed. The last report of the treasurer shown by the record was made on January 1, 1908, and showed a deficiency of $66.75, and on January 25, 1908, a levy of $75 was made. No additional levy and no additional expenses or disbursements are shown by the drainage record. The statute has not made the filing and recording of these reports each year, or in the year immedi-

280 – 20

ately preceding an assessment, conditions precedent to the levy of an additional assessment. The appellees rely on the case of *People* v. *Adair*, 247 Ill. 398, where it is said the drainage record must show a deficiency of funds before the lands of the district can be taken from the owners by forced sale to satisfy an additional or supplemental assessment. That fact appears from the drainage record in this case. That record showed the report of a deficiency in 1908 and a levy just sufficient to cover it. It showed that no subsequent levy was made. It was therefore apparent that there was a deficiency, and this information was readily available to anyone who chose to examine the drainage record. The first objection above mentioned was therefore properly overruled.

The second and third of the objections are not sustained by the record. The drainage record contains the record of a meeting held on September 13, 1915, which shows that the commissioners at such meeting found that it would be necessary to raise by special assessment upon the lands and public roads of the district $2000 to make the repairs and improvements proposed to be made. The record shows that the assessment roll was filed with the clerk on the same day, though he failed to record it at that time.

The remaining objection attacks the classification upon which the tax was extended because the proper notice of the meeting to hear objections was not given to two of the land owners and because the assessment includes land outside the district. Other objections to the classification were made in the county court, but they were among those stricken by the court and no cross-error has been assigned on this order. The record of the meeting to hear objections to the classification shows that the commissioners found that each of the land owners residing in Douglas county had been served with a printed notice of the time, place and object of said meeting by personally delivering such notice to him more than three days prior to the meeting,

as required by section 23 of the Farm Drainage act. Evidence was introduced to contradict this finding so far as the appellee W. E. Carroll was concerned, and it was shown that no notice was served upon him three days before the meeting. This notice was jurisdictional and the judgment of confirmation without it was void. (*Payson* v. *People,* 175 Ill. 267.) It was competent to impeach the finding of the commissioners as to the notice by oral testimony. Drainage commissioners exercise only a special jurisdiction for a particular purpose and have no authority except that conferred by the statute in the particular case. The usual rule is that the jurisdiction of such inferior tribunals over the person as well as the subject matter may be inquired into collaterally even in contradiction of their express findings. (12 Ency. of Pl. & Pr. 204.) No presumptions are indulged as to the jurisdiction of such tribunals but the facts showing jurisdiction must appear affirmatively. Their own findings of such facts are, however, only *prima facie* evidence of jurisdiction and may be shown to be untrue, though this rule applies only to questions of jurisdiction and not to the action of the tribunal after jurisdiction has been acquired. (Jones on Evidence,—2d ed.—sec. 36, p. 35; 23 Cyc. 1512; *Anderson* v. *Hamilton County Comrs.* 12 Ohio St. 635; *Sears* v. *Terry,* 26 Conn. 273; *Culver's Appeal,* 48 id. 165; *People* v. *Commissioners,* 27 Barb. 94.) This objection of the appellee Carroll should have been sustained. The same objection by the appellee Masterson was properly overruled because the notice was delivered to him five days before the hearing. It was sent by a messenger, but the statute does not require that the commissioners shall personally deliver the notice, but only that they shall cause it to be served by delivering a copy thereof to the party to be served.

The objection that the assessment includes lands outside the district refers to the land of C. M. Harshbarger, and the evidence to sustain it is the testimony of the town

clerk, who stated that he examined his office for all the records of districts Nos. 2 and 5 and brought all he could find. He was asked whether or not he had found in those books any record of the annexation or inclusion of the land of Harshbarger. He answered that he had not. To the question if he had any record of any assessment against the land of Harshbarger prior to this assessment he answered that he had not, and said that he had found no record in those records of any action of the commissioners with reference to Harshbarger's land prior to these assessment proceedings. He had been clerk only since the spring before the hearing and knew nothing about the district before he came into office. The main district had been in existence twenty-five or thirty years and there were fourteen or fifteen sub-districts. He did not know whether there were any other records about sub-district No. 5. He did not find in these books any record of the organization of the sub-district or the original classification. This did not show that Harshbarger's land was not within the district. Neither the record of the original organization of the sub-district nor that of any annexation proceeding was introduced in evidence. It was not shown that any record was lost or destroyed or that no record had ever existed. The clerk stated that he had found no record but not that he had searched for one, and he did not testify that the records he produced were all the records of the district but said he did not know. Upon another hearing a thorough search in the clerk's office and examination of the records may furnish satisfactory evidence as to whether or not the Harshbarger land is included in the sub-district.

It is insisted by the appellees that the fact that no notice was given to Carroll and that his assessment was therefore invalid is a sufficient objection to the classification in behalf of the other owners. The object of the classification is to require the payment of the expense of drainage by the owners of the lands benefited, in proportion to the amount

of the benefits received. Every owner is therefore injured by the omission of the property of another owner which is subject to assessment. The law makes no provision for the subsequent classification and assessment of land which has been omitted, and if the objection to the classification is not available to owners who have been assessed they are without remedy and the property omitted will receive its share of benefits without being compelled to pay any part of the costs. An intentional classification of a part, only, of the lands of the district is unauthorized by law. (*People* v. *Cole*, 128 Ill. 158.) The effect is not different where the lands of a part of the owners have been omitted from the classification through a failure of the commissioners to acquire jurisdiction of such owners. The reason applies in such a case equally as in case of the original organization of a drainage district embracing lands of different proprietors, in which case jurisdiction of all land owners must be acquired by the commissioners before they can lawfully act. (*Mason and Tazewell Drainage District* v. *Griffin*, 134 Ill. 330.) For this reason the objection of the appellee Masterson should have been sustained. This objection was not, however, available to the other appellees, because as to them it was stricken and no exception was preserved to the order of the court striking it.

As to the appellees Carroll and Masterson the judgment will be affirmed; as to the appellees Graham and Stephenson the judgment will be reversed and the cause remanded, with directions to overrule their objections, and as to the appellee Harshbarger the judgment will be reversed and the cause remanded for another hearing.

*Reversed in part and remanded, with directions.*